UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ANIT WELLS and ROBERT WELLS,

                    Plaintiffs,

          v.

COLUMBIA VALLEY COMMUNITY
HEALTH, and the United States
of America,

                    Defendants.

NO. 05-0009-EFS

**ORDER DENYING GOVERNMENT'S
MOTION FOR SUMMARY JUDGMENT
AND *SUA SPONTE* GRANTING
PARTIAL SUMMARY JUDGMENT IN
FAVOR OF PLAINTIFFS**

     On June 13, 2006, the Court held a telephonic hearing in the above-
captioned matter.  Louis Rukavina represented Plaintiffs Anit and Robert
Wells, and Assistant United States Attorney Frank Wilson appeared on
behalf of Defendant United States of America ("Government").  During the
hearing, the Court heard argument on the Government's Motion for Summary
Judgment.[1] (Ct. Rec. 15.)  After hearing oral argument and reviewing the
submitted materials, the Court was fully informed and denied the
Government's motion.  In addition, because the record suggested
*Plaintiffs* may be entitled to summary judgment on the issues presented

---

     [1]The Court also heard oral argument on Plaintiffs' Motion to Strike
Defendant's Expert, Cynthia Durante, M.D. (Ct. Rec. 33.)  The Court's
ruling on that motion was provided in a separate order. (*See* Ct. Rec.
43.)

ORDER ~ 1

in the Government's motion, the Court indicated it may *sua sponte* enter summary judgment in favor of Plaintiffs on the issue, but provided the Government an opportunity to supplement the record prior to the Court making a final determination on that issue.  Thereafter, on June 22, 2006, the Government notified the Court that it would not be supplementing the record.  (Ct. Rec. 44.)  Accordingly, the Court now also considers whether partial summary judgment should be entered in favor of Plaintiffs.

## I. Background

In this action, Plaintiffs bring claims of negligence and loss of consortium, which arise from the medical care of Mrs. Wells by Columbia Valley Community Health ("CVCH") and its treating staff. (Ct. Rec. 1 at 2.)[2]  Plaintiffs allege that between November 2001 and February 2002, Mrs. Wells was treated by Dr. Cynthia Durante, an employee of CVCH, for symptoms stemming from an undiagnosed neuromuscular disorder. *Id*.  On or about February 18, 2002, Plaintiffs allege Mrs. Wells' condition deteriorated. *Id*.  Mrs. Wells was then seen by Dr. Durante and diagnosed with multiple medical conditions including anemia, significant malnutrition, and a developing decubitus wound in the sacral spine. *Id*. Plaintiffs claim these conditions went untreated until March 28, 2002, when Mrs. Wells was transferred to Central Washington Hospital in Wenatchee after entering a state of physical collapse. *Id*.

---

[2]The Court assumes that Mrs. Wells received treatment from both CVCH and Lake Chelan Community Hospital for her medical conditions, and that both contributed to the alleged medical negligence that caused Plaintiffs' purported injuries.

ORDER ~ 2

On November 17, 2003, Dr. Sabine Von Preyss-Friedman, a medical expert retained by Plaintiffs, opined that Lake Chelan Community Hospital ("LCCH") and CVCH, through Dr. Durante, failed to meet the standard of care in their treatment of Mrs. Wells. (Ct. Rec. 19 Ex. B at 2-3.)  On November 18, 2003, Plaintiffs sent a settlement proposal to Washington Casualty Company, LCCH's insurer, and notified CVCH of their intent to sue. *Id.* at Ex. C.

On December 15, 2003, Plaintiffs were notified that CVCH is a federally-funded community health center and therefore covered and protected by the Federal Tort Claims Act. *Id.* at Ex. D.  Plaintiffs then submitted a claim to the United States Department of Health and Human Services on January 22, 2004, *id.* at Ex. E, which acknowledged the claim on February 4, 2004. *Id.* at Ex. F.

LCCH, through its insurer Washington Casualty Company, proposed a revised settlement agreement to Plaintiffs on May 8, 2004, *id.* at Ex. G, which was agreed to by Plaintiffs on May 12, 2004, *id.* at Ex. H. As part of the agreed settlement, Plaintiffs and the Washington Casualty Company signed a Release and Hold Harmless Agreement ("Release"). *Id.* at Ex. H. at 3.  The Release states that in consideration for $150,000, Plaintiffs

> release and forever discharge LAKE CHELAN COMMUNITY HOSPITAL, Washington Casualty Company, their employees, agents, successors and assigns, and/or his, her, their heirs, executors and administrators, *and also any and all other persons, associations and corporations, whether herein named or referred to or not*, and who, together with the above named, may be jointly or severally liable to the Undersigned.

*Id.* at Ex. H at 1 (emphasis added).

According to Plaintiffs, at no time did either party to the Release intend to release from liability anyone other than LCCH, Washington Casualty Company, their employees, agents, successors and assigns and/or

1  heirs. (Ct. Rec. 19 at 3.)  In support of this position, Mr. Rukavina,

2  Plaintiffs' attorney, stated under oath:

3      I overlooked language in the Release purporting to release not
        only Lake Chelan Community Hospital and Washington Casualty,
4      but also anyone else who was, or may be, jointly and severally
        liable for Mrs. Wells' injuries . . . .  At no time did I, or
5      my clients, intend to release Columbia Valley Community Health
        or the United States.
6

7  *Id.* at Ex. A ¶¶ 10, 12.  Similarly, Barbara McCarthy, Vice President of

8  Claims for Washington Casualty Company, stated in an affadavit: "It was

9  not our intent to discharge anyone other than our insured . . . .

10 Specifically, there was no intent to release and discharge the United

11 States Government." *Id.* at Ex. I ¶¶ 6-7.  In addition, Mr. Wells has

12 stated under oath: "I did not read [the Release] real carefully because

13 I do not understand legal language very well. I never intended to release

14 Dr. Durante, or her clinic, because Mr. Rukavina told us he was still

15 going to sue Dr. Durante and her clinic." *Id.* at Ex. J ¶ 10.

16     On October 4, 2004, the U.S. Department of Health and Human Services

17 denied Plaintiffs' claims against CVCH. *Id.* at Ex. K.  Plaintiffs filed

18 suit against CVCH and the United States on January 13, 2005. (Ct. Rec.

19 1.)

20                    **II. Summary Judgment Standard**

21     Summary judgment will be granted if the "pleadings, depositions,

22 answers to interrogatories, and admissions on file, together with the

23 affidavits, if any, show that there is no genuine issue as to any

24 material fact and that the moving party is entitled to judgment as a

25 matter of law." FED. R. CIV. P. 56(c).  When considering a motion for

26 summary judgment, a court may not weigh the evidence nor assess

   credibility; instead, "the evidence of the non-movant is to be believed,

ORDER ~ 4

and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id*. at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.*  There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### III.  Analysis

**A. Contract Law in Washington**

The Federal Tort Claims Act expressly provides that the United States is liable for torts "under circumstances where the United States,

if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Therefore, under the Federal Tort Claims Act, "state law, not federal law, controls." *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963). Accordingly, Washington state law is applied in this case.

A release, such as the one Plaintiffs signed with Washington Casualty Company, is a contract and "is to be construed according to the legal principles applicable to contracts." *Boyce v. West*, 71 Wash. App. 657, 662 (1993). Releases are therefore subject to the rules of contract interpretation. *Nationwide v. Watson*, 120 Wash. 2d 178, 187 (1992). In Washington "the general rule [is] that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake." *Berg v. Hudesman*, 115 Wash. 2d 657, 669 (1990). However, despite the above-stated parol evidence limitations, parol evidence may be considered in limited situations under the "Context Rule" outlined in *Berg*. *Id*. at 667.

Under the Context Rule, parties may introduce extrinsic evidence, including parol evidence, as to the entire circumstances under which a contract was made, to aid the court in ascertaining the parties' contracting intent. *Id*. Pursuant to this rule, parol evidence "is admitted not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed." *Id*. Nevertheless, even when extrinsic evidence is considered, courts must still determine "the meaning of what was written, and not what was intended to be written." *Id*.

Even though these Context Rule was generally explained in *Berg*, there has been confusion as to what kinds of parol evidence may be

1  admitted and for what purposes. *Hearst Commc'ns Inc. v. Seattle Times*
2  *Co.*, 154 Wash. 2d 493, 502 (2005). The Washington Supreme Court recently
3  clarified its position in *Berg* by explaining its "intention in adopting
4  the 'Context Rule' was not 'to allow such evidence to be employed to
5  emasculate the written expression of' the meaning of the contract terms,"
6  and "admissible extrinsic evidence does not include evidence of a party's
7  unilateral or subjective intent as to a contract's meaning." *Id.* at 503
8  (citing *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wash. 2d 565, 571
9  (1996), and *Go2Net, Inc. v. C 1 Host, Inc.*, 115 Wash. App 73 (2003)).
10  The court in *Hearst* further explained that contracts in Washington are
11  interpreted following the "objective manifestation" theory. *Id.* "Under
12  this approach, [courts] attempt to determine the parties' intent by
13  focusing on the objective manifestations of the agreement rather than on
14  the unexpressed subjective intent of the parties." *Id.* Therefore, under
15  normal contract interpretation, the words of the contract are given their
16  "ordinary, usual, and popular meaning" and extrinsic evidence may be
17  admitted to "determine the meaning of specific words or terms used," but
18  not to "show an intention independent of the instrument or to vary,
19  contradict, or modify the written word." *Id.* at 503-04 (citing *Hollis v.*
20  *Garwall, Inc.*, 137 Wash. 2d 683, 693 (1999), & *Universal/Land Constr. Co.*
21  *v. City of Spokane*, 49 Wash. App. 634, 637 (1987)).

22      This Court limits the ruling in *Hearst* to the particular facts of
23  that case. Specifically, *Hearst* only applies to contract disputes
24  between parties to the contract and not between a party to the contract
25  and a third-party beneficiary of the contract. As explained below,
26  whether or not a contract such as a release benefits a third-party to the
   contract is established by extrinsic evidence.

ORDER ~ 7

**B. Release Interpretation Exception**

Three different rules have emerged for interpreting releases. Paul H. Bass, "*Tort Law The General Release Forms: Three Distinct Ways*", 21 AM. J. TRIAL ADVOC. 445, 445 (1997). Some states apply the Flat Bar Rule, others apply the Specific Identity Rule, and still others apply the Intent Rule. *Id.* Under the Flat Bar Rule, a general release provides for a complete discharge of all potential tortfeasors. *Id.* Under the Specific Identity Rule, a general release does not release any of the potential tortfeasors unless they are specifically named in the release. *Id.* at 446. The Intent Rule occupies a middle-ground between the Flat Bar and Specific Identity Rules and allows extrinsic evidence to be introduced to reveal the intentions of the contracting parties as to the scope of the release, i.e. whether it applies to *third parties*. *Id.*

While no Washington case clearly adopts one of the three above-described rules, the Court nonetheless extrapolates that Washington adheres to the Intent Rule based on the following case law. To begin, in Washington, the creation of a third-party beneficiary to a contract "requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Burke & Thomas, Inc. v. Int'l Org. of Masters*, 92 Wash. 2d 762, 767 (1979). In order to determine the intent of the contracting parties regarding the creation of a third-party beneficiary the court construes "the terms of the contract as a whole, in light of the circumstances in which it was made." *Postlewait Constr., Inc. v. Great Am. Ins. Co.*, 106 Wash. 2d 96, 99-100 (1986). "The general rule is that third-parties are not bound by, nor may they use, the parol evidence rule against parties to a writing." *Prior Bros., Inc. Int'l Harvester Co. v.*

*Bank of Cal.*, 29 Wash. App. 905, 910 (1981); *Wittenberg. v. Sylvia*, 35 Wash. 2d 626, 629 (1950).  Additionally, where a third-party beneficiary "to an instrument is free to vary or contradict it by parol evidence, his adversary, although a party to the instrument, is equally free to do so." *Id.* at 630.  The guidance offered by these cases strongly suggests that the Intent Rule should be used to determine whether a release covers would-be third-party beneficiaries.

In this case, the Government alleges it is a third-party beneficiary under the Release signed by Plaintiffs. (Ct. Rec. 16 at 3.)  The Government's claim is analyzed according to the intent of the contracting parties in terms of the contract as a whole and the circumstances in which it was made. *See Postlewait,* 106 Wash. 2d at 99.  The Government is permitted, because it was not one of the parties to the contract, to offer extrinsic evidence to reinforce its claim as a third-party beneficiary. *See Prior Bros.*, 29 Wash. App. at 910.  However, because the Government is allowed to do so, it may not bar Plaintiffs from also using extrinsic evidence to support their position that the Government was never intended to be a third-party beneficiary. *See Wittenberg*, 35 Wash. 2d at 630.

A case similar to the one at hand is *Rudick v. Pioneer Memorial Hospital*, 296 F.2d 316 (9th Cir. 1961).  Although that case arose under Oregon contract law, it is helpful to the current analysis because Oregon law, on this point, is nearly identical to Washington law. *Rudnick*, 296 F.2d at 319  ("Oregon [is] among those jurisdictions which follow the well established rule that a litigant who was not a party to a written agreement upon which he seeks to rely, may not prevent the introduction of parol evidence to establish the intention of the parties to the

ORDER ~ 9

1  agreement.")  In *Rudnick*, the court admitted parol evidence to show that
2  when the plaintiff signed a release with one party for the personal
3  injury she suffered, she did not intend to release a separate party, even
4  though the language of the release stated "the undersigned . . . does
5  hereby release . . . all other persons, firms and corporations in any way
6  interested or concerned."  *Id.* at 317 & 319.

7    The language of the Release in the present case contains similarly
8  broad language as the release in *Rudnick*.  (Ct. Rec. 18 Ex. A.)  The
9  Government claims to be covered by the broad language of the Release,
10 while Plaintiffs contend it was never the intent of the contracting
11 parties to release the Government from liability.  Extrinsic evidence
12 offered by Plaintiffs to show neither party intended to release the
13 Government includes: (1) the declaration of Barbara McCarthy in which she
14 states Washington Casualty Company did not intend to release the
15 Government at the time the Release was issued (Ct. Rec. 19 Ex. I); (2)
16 the testimony of Plaintiff, *id.* at Ex. J, and Plaintiffs' counsel, *id.*
17 at Ex. A ¶ 3; (3) the inference of concurrent negligence in Ms.
18 McCarthy's settlement proposal letter of May 8, 2004, *id.* at Ex. G; and
19 (4) Plaintiffs' persistence with their claim against the Government
20 subsequent to settlement with Washington Casualty Company.  Based on this
21 extrinsic evidence which must be viewed in the light most favorable to
22 Plaintiffs as the non-moving party, the Court finds a reasonable jury
23 could find in favor of Plaintiffs that the contracting parties did not
24 intend to release the Government from liability.  Therefore, it is clear
25 that whether or not the Government was intended to be a third-party
26 beneficiary under the Release is *at the least* a disputed material fact.

1  Accordingly, the Government is not entitled to summary judgment on this
2  issue and its motion is denied.

3  **C.  Partial Summary Judgment in Favor of Plaintiffs**

4       In light of the evidence submitted to the Court, the Court concludes
5  there is, in fact, no genuine dispute of material fact regarding whether
6  the Government was intended to be a third-party beneficiary to the
7  Release between Plaintiffs and Washington Casualty Company.  The above-
8  described extrinsic evidence offered by Plaintiffs demonstrates that
9  neither contracting party intended to release the Government.  Despite
10 the opportunity afforded to the Government to supplement the record, it
11 has failed to offer any evidence to rebut the evidence offered by
12 Plaintiffs.  Thus, when all of the evidence is considered in the light
13 most favorable to the Government, the Court finds no genuine dispute
14 exists as to whether the contracting parties intended to release the
15 Government from liability.  All evidence indicates there was no such
16 intent.  Therefore, the Court concludes the Government is not a third-
17 party beneficiary of the Release, and *sua sponte* grants summary judgment
18 on this issue in favor of Plaintiffs.

19                              **IV. Conclusion**

20       For the reasons given above, **IT IS ORDERED:** The Government's
21 Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED** and summary judgment
22 is *sua sponte* granted in favor of Plaintiffs on the issue that the
23 contracting parties did not intend to release the Government from
24 liability.

25

26

1        **IT IS SO ORDERED.**   The District Court Executive is hereby directed

2    to enter this Order and to furnish copies to counsel.

3        **DATED** this 28th day of July 2006.

4

5                          _____s/Edward F. Shea_____

6                              EDWARD F. SHEA
                          United States District Judge

7

8
Q:\Civil\2005\0009.MSJ.2.frm

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 12